IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

LASHAUN REED,                          )       Case No. 5:15CV331
                                       )
               Petitioner,             )
                                       )       JUDGE JAMES G. CARR
       v.                              )       Magistrate Judge George J. Limbert
                                       )
JAY FORSHEY, Warden,                   )
                                       )       **REPORT AND RECOMMENDATION**
               Respondent.             )       **OF MAGISTRATE JUDGE**

       This matter is before the undersigned on a petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254, filed by Petitioner Lashaun Reed ("Petitioner") on February 19, 2015.[1]  ECF

Dkt. #1.  Petitioner seeks relief from his convictions and sentence for aggravated murder and

murder entered by the Wayne County, Ohio, Court of Common Pleas.  *Id*.  On January 12, 2016,

Respondent, Jay Forshey ("Respondent"), Warden of the Ohio State Penitentiary in

Youngstown, Ohio, filed a return of writ.  ECF Dkt. #8.  On April 4, 2016, Petitioner filed a

traverse.  ECF Dkt. #12.  On April 11, 2016, Respondent replied to the traverse.  ECF Dkt. #13.

       For the following reasons, the undersigned RECOMMENDS that the Court DISMISS

Petitioner's federal habeas corpus petition (ECF Dkt. #1) in its entirety with prejudice.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

---

[1]The filing date for a petition from an incarcerated *pro se* petitioner is the date the petition was handed over to the prison mail system, not the date it was received and docketed by the federal habeas court. *Houston v. Lack*, 487 U.S. 266, 270-72 (1988).  However, Petitioner's habeas petition does not indicate the date on which it was handed over to the prison for mailing.  In any event, the timeliness of Petitioner's habeas petition is not at issue in this case.

### A.  *Factual History*

The Ninth District Court of Appeals of Ohio set forth the following facts of this case on direct appeal.  These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360–361 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

{¶ 2} At approximately 2:30 a.m. on the morning of December 10, 2011, Ashon Palmer, Samantha Ralston, Angela Rolen, and Erica Lunsford drove to Orrville to pick up Lunsford's boyfriend from work. During this trip, Palmer received a phone call from his half-brother, Lashaun Reed. Palmer told Reed to calm down and to wait until he got there. Palmer then asked Lunsford if she knew who "Gucci" and "Bear" were. Lunsford told him that they were "Detroit boys," people from Detroit that "hang out" around the City of Wooster, Ohio.

{¶ 3} Upon the group's return from Orrville, Palmer had them drop him off at an intersection, where Reed picked him up. According to Palmer, Reed had a handgun but wanted more firepower because he believed Gucci was armed and going to "shoot up his house." Reed requested Palmer's AK–47, and the two went to retrieve the gun from a friend's house. The gun, however, was missing the magazine, which rendered it useless. Sometime thereafter, Palmer called his aunt to come pick him up at Reed's house.

{¶ 4} As Palmer was getting into his aunt's car, he noticed Reed get into his car and leave. Palmer asked his aunt to follow him. Reed pulled down an alley close to North Street, and Palmer jumped out of the car to follow him on foot. According to Palmer, he was attempting to prevent Reed from going to look for Gucci. As the two walked out of the alley onto North Street, Reed noticed a few people standing in front of a house. Reed approached the man standing on the sidewalk, placed a handgun to his chest, and asked if he was "Gucci." Gucci grabbed the gun and it fired. Reed and Gucci wrestled to the ground. After the first shot, Samantha Ralston, who had been standing in front of the house, ran inside. Palmer testified that he also took off running after the first shot. According to Palmer, he looked back as he was running away and saw Reed stand up and fire another shot at Gucci, who was still on the ground attempting to stand up. Palmer called his aunt again to come pick him up. Gucci was helped inside the North Street house and calls were made to 911. Gucci died shortly after being transported to the hospital.

2

*State v. Reed*, No. 12 CA 0051, 2013-Ohio-3970, 2013 WL 5220878, at *1 (Ohio Ct. App. Sept. 16, 2013).

### B. *Procedural History*

### 1. *State Trial Court*

On January 30, 2012, the Wayne County Grand Jury issued an indictment charging Petitioner with one count of aggravated murder in violation of Ohio Rev. Code. § 2903.01(A) and one count of murder in violation of Ohio Rev. Code. § 2903.02(A).  ECF Dkt. #8-1 at 4-5. Both counts carried a firearm specification under Ohio Rev. Code. § 2941.145(A).  *Id*.  Petitioner rejected a plea agreement offered by the prosecution and entered a plea of not guilty to the charges.  *Id*. at 6, 7-8.

Petitioner's case proceeded to trial by a jury on August 6, 2012.  ECF Dkt. #8-1 at 11. On August 8, 2012, the jury found Petitioner guilty as charged.  *Id*. at 10.  On August 10, 2012, the trial court sentenced Petitioner to imprisonment for life without the possibility of parole for the aggravated murder charge, three years' imprisonment under the firearm specification, and a mandatory five years of post-release control.  *Id*. at 12.  The court merged the aggravated murder and murder charges for purposes of sentencing.  *Id*.

### 2. *Direct Appeal*

Petitioner, through new counsel, appealed to the Ninth District Court of Appeals.  *Id*. at 14.  In his appellate brief, he asserted the following assignments of error:

1.   The evidence was insufficient for conviction of aggravated murder under [Ohio Rev. Code §] 2903.01(A)(1).

2.   The verdict of guilty of aggravated murder is against the manifest weight of the evidence.

3

3.    The verdict of guilty of murder was against the manifest weight of the evidence.

4.    The photo arrays used by the police to obtain identifications of Lashaun Reed were improperly suggestive in violation of U.S. Const. [a]mend. V and XIV, and Ohio Const. [a]rt. I, [§] 10, and failed to comply with Ohio Revised Code [§] 2933.83, and the use of photo array testimony and evidence during trial was plain error.

5.    It was plain error to allow the prosecutor to argue that Ashon Palmer had motive to lie because he could not have been prosecuted.

6.    It was plain error for the court to fail, *sua sponte*, to instruct the jury on accomplice testimony, in violation of Lashaun Reed's right to a fair trial, U.S. Const. [a]mend. V, XIV, Ohio Const. [a]rt. 1, [§] 10.

7.    The sentencing judge committed plain error by improperly considering Lashaun Reed's rejection of a plea bargain to be evidence of failing to accept responsibility, leading to a harsher sentence based on that consideration, in violation of due process, U.S. Const. [a]mend. V, VI, XIV, Ohio Const. [a]rt. I, [§] 10; and the sentence was otherwise unduly harsh.

8.    It was plain error for the trial court to order five years of mandatory post-release control for an unclassified felony.

9.    It was plain error for the sentencing court to examine a pre-sentence investigation from a previous case prior to sentencing.

10.   The conviction is reversible on grounds of ineffective assistance of counsel.

*Id*. at 20-21.

On September 16, 2013, the state appellate court affirmed the trial court's judgment,

except for its sentence of post-release control, which it reversed and remanded to the trial court

to remove that sentence from the sentencing entry.  *Reed*, 2013 WL 5220878; ECF Dkt. #8-1 at

123-56.

4

### 3.  *Ohio Supreme Court*

Petitioner, through different counsel, filed a timely notice of appeal in the Ohio Supreme

Court.  ECF Dkt. #8-1 at 157-59.  In his memorandum in support of jurisdiction, he asserted the

following propositions of law:

1. A witness who is granted immunity for his criminal acts committed in complicity with the defendant's acts, is an accomplice for purposes of [Ohio Rev. Code §] 2923.03(D) and [Ohio Rev. Code §] 2923.01(H)(2), and a trial court commits plain error if a cautionary instruction is not given to inform the jury that the accomplice's testimony should be viewed with suspicion.

2. If the police present an eyewitness with multiple photo arrays and include a photograph of the defendant in each array, the resulting identification is not reliable because it was caused by unduly suggestive police procedures.

3. The State may not chill a defendant's exercise of his Sixth Amendment right to trial by suggesting that if the defendant is convicted, the State will and the court may take into account the defendant's exercise of that right in crafting his or her sentence.

*Id*. at 161.  On February 19, 2014, the Ohio Supreme Court declined jurisdiction over

Petitioner's appeal.  *Id*. at 213.

### 4.  *Post-Conviction Proceedings*

On January 28, 2014, Petitioner, pro se, filed a petition to vacate or set aside his

conviction or sentence with the trial court.  *Id*. at 214.  In his petition, he raised the single claim

that he was deprived of his Sixth Amendment right to effective assistance of counsel, but stated

in support of the claim only "that it was a long range shot."  *Id*. at 215.  Petitioner also filed that

day a motion for appointment of counsel.  *Id*. at 218-20.  And he filed a motion for expert

assistance, requesting a "trajectory expert" to "tell how far was the bullet range" and if it was

"long range or short range" to support his claim that trial counsel were ineffective "for not hiring

a trajectory expert." *Id*. at 221-23.[2]

On March 3, 2014, the court denied Petitioner's post-conviction petition on the grounds that it was not properly served on opposing counsel and "may not have been timely filed." *Id*. at 224.  The court also denied Petitioner's motions for counsel and expert assistance.  *Id*.  Petitioner states he did not appeal the trial court's judgment.  ECF Dkt. #1 at 4.

## II.  *FEDERAL HABEAS CORPUS PETITION*

Petitioner filed a § 2254 federal habeas corpus petition on February 19, 2015.  ECF Dkt. #1.  He asserts the following grounds for relief:

1.    The Wayne County, Ohio, Court of Appeals unreasonably and contrarily applied *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984) when it ruled that Lashaun Reed had not established ineffective assistance of counsel.

2.    The Wayne County, Ohio, Court of Appeals unreasonably and contrarily applied *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1977) when it ruled that Reed was not punished for exercising his right to trial.

*Id*. at 15-17.

Respondent filed an answer/return of writ on January 12, 2014.  ECF Dkt. #8.  Petitioner filed a traverse on April 4, 2016.  ECF Dkt. #12.  Respondent replied to the traverse on April 11, 2016.  ECF Dkt. #13.

## III.  *PROCEDURAL BARRIERS TO REVIEW*

A petitioner must overcome several procedural barriers before a court will review the

---

[2] The copy of Petitioner's motion for expert assistance submitted to this Court with Respondent's return of writ does not show a filing date.

merits of a petition for a writ of federal habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.  *Statute of Limitations*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgment became final.  28 U.S.C. § 2244(d)(1). Respondent does not challenge the timeliness of Petitioner's habeas petition.

### B.  *Exhaustion of State Remedies*

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 (citing *Petrucelli v. Coombe*, 735 F.2d 684, 688–89 (2nd Cir. 1984)).

In order to have fairly presented the substance of each of his federal constitutional claims

7

to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by:  (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993), *cert. denied*, 509 U.S. 907 (1993).  In *Harris v. Lafler*, 553 F.3d 1028, 1031–32 (6th Cir. 2009), the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id.* at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

The Supreme Court has held that "the petitioner has the burden ... of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist."  *Darr v. Burford*, 339 U.S. 200, 218–19 (1950), overruled in part on other grounds, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and

8

actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.  *Procedural Default*

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds."  *Coleman*, 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment."  *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991)) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition.  *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there are no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit established a four-pronged analysis to determine whether a claim has been procedurally defaulted under *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule.  *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991).  Under the second prong, the last state court to which the petitioner sought review must have invoked the

procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman*, 501 U.S. at 729–30; *Richey v. Mitchell*, 395 F.3d 660 at 678 (2005) (holding that "a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (holding that if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (holding that even if the issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises).  Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision.  *Munson v. Kapture*, 384 F.3d at 313–14. Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman,* 501 U.S. at 751.  "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice.  *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e.,

10

exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004).

## IV.  *STANDARD OF REVIEW*

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion, and procedural default, the AEDPA governs this Court's review of the instant case because Petitioner filed the instant § 2254 federal habeas corpus petition well after the AEDPA's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir.1997), *cert. denied*, 522 U.S. 1112 (1998).  Under § 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was *contrary to*, or involved *an unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has

11

> on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. 362, 412–13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id*.  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id*.; *see also Bailey v. Mitchell*, 271 F.3d 652, 655–56 (6th Cir. 2001).

The Sixth Circuit offers the following guidelines for applying the AEDPA limitations:

A.  Decisions of lower federal courts may not be considered.

B.  Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.  The state court decision may be overturned only if:

1.  it '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal]; or

2.  the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent'; or

3.  'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case'; or

12

4.      the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.      Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.      Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey*, 271 F.3d at 655–56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine*, 986 F.2d at 1514.  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore

13

the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n. 4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## V.  *ANALYSIS*

### A.  *FIRST GROUND FOR RELIEF:  Ineffective Assistance of Counsel*

In his first ground for relief, Petitioner argues that he was denied his Sixth Amendment right to the effective assistance of trial counsel.  Specifically, he claims trial counsel:  (1) failed to file a motion to suppress State witness Samantha Ralston's photo identification of him; and (2) failed to object to the prosecution's recommendation of a more severe sentence at trial than it had offered him during plea negotiations because he rejected the State's plea offer, and to the trial court's sentence of life without parole based on that recommendation.  ECF Dkt. #1 at 15-16.  Petitioner raised these claims on direct appeal in state court, where they were adjudicated on the merits.  *See Reed*, 2013 WL 5220878, at *9-13, 15-16.  Respondent argues the claims lack merit.  ECF Dkt. #8 at 22-28.

The Supreme Court long has recognized that the Sixth Amendment right to the effective assistance of counsel at trial "is a bedrock principle in our justice system."  *Martinez v. Ryan*, 132 S. Ct. 1309, 1317 (2012).  *See also Gideon v. Wainwright*, 372 U.S. 335, 342-44 (1963).  The Court announced a two-prong test for habeas claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  First, the petitioner must demonstrate that counsel's errors were so egregious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id* at 687.  Second, the petitioner must show that he or

14

she was prejudiced by counsel's errors. To do this, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

"*Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (quoting *Strickland,* 466 U.S. at 689-90). The Supreme Court has observed that the standards imposed by *Strickland* and § 2254(d) are both "highly deferential," so that in applying them together, "review is 'doubly' so." *Harrington v. Richter,* 562 U.S. 86, 105 (2011).

### 1. Failing to move to suppress photo identification

Petitioner first complains that his trial counsel should have moved to suppress Ralston's photo identification of him. ECF Dkt. #12 at 6-19. Due process forbids police officers from using identification procedures that are "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). It is the likelihood of misidentification that violates the defendant's due process right. *Neil v. Biggers*, 409 U.S. 188, 198 (1972). Misidentification may occur when a witness is called upon to identify a stranger whom he or she has observed only briefly, under poor conditions, and at a time of extreme emotional stress and excitement. *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994) (citing *Manson v. Brathwaite*, 432 U.S. 98, 112 (1977); *Simmons*, 390 U.S. at 383; *United States v. Russell*, 532 F.2d 1063, 1066 (6th Cir. 1976)).

A two-part test is employed in assessing the validity of a pretrial identification. *Ledbetter,* 35 F.3d at 1070. The court first considers whether the procedure was unduly

suggestive. *Id*. at 1070-71.  The petitioner bears this burden of proof.  *Id*. at 1071 (citing *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992)).  If the procedure is determined to be unduly suggestive, the court then proceeds to the second step of the analysis to determine whether the pretrial identification was nonetheless reliable under the totality of the circumstances.  *Id*. at 1071.

The state appellate court, the last state court to address this claim, first addressed the issue of whether the trial court erred by admitting Ralston's identification of Petitioner because the photo array was unduly suggestive, stating:

{¶ 41} In his fourth assignment of error, Reed argues that photo arrays shown to Ralston were impermissibly suggestive and her identification of Reed should have been suppressed. In addition, as part of his tenth assignment of error, Reed argues that his trial counsel was ineffective for failing to file a motion to suppress Ralston's photo array identification and for failing to object to the testimony of her identification.

{¶ 42} Reed did not file a motion to suppress Ralston's identification and did not object to the testimony of the photo arrays at trial. Crim.R. 12 requires challenges to the admissibility of identification testimony to be raised by way of a motion to suppress, prior to trial. *State v. Jones*, 9th Dist. Summit No. 26226, 2012–Ohio–2744, ¶ 14. Because Reed did not challenge the admissibility of the identification, he has forfeited any objection to it and limited himself to a claim of plain error. *Id.* Under Crim.R. 52, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Plain error is not present unless but for the error complained of, the outcome of the trial would have been different." *State v. Gardner*, 118 Ohio St.3d 420, 2008–Ohio–2787, ¶ 78.

{¶ 43} Determining the admissibility of identification testimony is a two-step process. The first step is to determine whether the process in procuring the identification was unduly suggestive. *State v. Villa*, 9th Dist. Lorain No. 05CA008773, 2006–Ohio–4529, ¶ 11. Second, if the identification procedure was unduly suggestive, the court must determine whether the identification is nevertheless reliable based on the totality of the circumstances. *Id.* However, if the procedure was not unduly suggestive, the reliability of the identification is a

16

matter of weight of the evidence, not admissibility. *See State v. Gross*, 97 Ohio St.3d 121, 2002–Ohio–5524, ¶ 22. The amount of weight to be given to the evidence and the credibility of the witnesses is within the province of the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶ 44} Ralston was escorted to the police station for questioning shortly after the shooting. At the station, she told Detective McCloud that she could identify the person that shot Gucci. Detective McCloud then put together a photo line-up which consisted of six photographs taken from the Wayne County Jail database. The photographs were of poor quality and had a purple tint to them. Detective McCloud placed the photos in folders and had Detective Merillat act as the blind administrator in compliance with R.C. 2933.83. Detective Merillat gave Ralston the following instructions prior to administering the photo line-up.

> I'm going to show you folders containing photographs. The photographs may or may not contain a picture of the person who committed the crime now being investigated. I do not know who the suspect is. Keep in mind that hairstyles, beards and mustaches may be easily changed and also photographs may not always depict the true complexion of a person. It may be lighter or darker than shown in the photo. Pay no attention to any markings or numbers that may appear on the photos or any other differences in the type or style of the photographs. Do not tell other witnesses that you have or have not identified anyone.

{¶ 45} Ralston was unable to make an identification after viewing this first photo array. She was then given the opportunity to view the photographs a second time. While she lingered over one of the photographs during her second viewing, she was unable to identify any of the photographs as being the person that shot Gucci.

{¶ 46} After seeing the photographs, Detective Merillat expressed concerns over their quality. He testified that the photos "were very dark and had sort of a purplish tint, [they] didn't really show the complexion of the person * * * [, and] that it would be difficult for anybody to make an identification [from] photographs that were of that * * * poor [quality]." Detective McCloud then compiled another photo array of six photographs taken from Ohio Law Enforcement Gateway ("OLEG") images. Reed was the only person to appear in both photo line-ups.

17

{¶ 47} After viewing the second photo array, Ralston identified Reed's photograph as the person that shot Gucci. She ranked her degree of certainty as 8 out of 10. After selecting the photograph, Detective McCloud showed Ralston additional photographs of Reed. She then said she was sure that he was the shooter.

{¶ 48} Reed argues that Ralston's identification should have been excluded because the administration of two photo arrays, with Reed being the only person to appear in both, was unduly suggestive. Reed further argues that the photo arrays were not administered in compliance with R.C. 2933.83. We disagree.

{¶ 49} The two photo arrays used different photographs of Reed. The first photograph was a "booking photo[ ] from the Wayne County Jail." It is dark, making it nearly impossible to distinguish between his jawline and his neck, and there is a flash spot on his forehead. The photograph is also tinted purple. Viewing this photograph, a person would not be able to determine Reed's complexion. In contrast, the second photograph of Reed was taken from OLEG images. The OLEG database contains driver's license and state identification photographs. This photograph is a very close and clear image of his face. Comparing the two photographs, despite having the same facial hair, it is not easily determined that they are photographs of the same person. "[R]epeated showing of a suspect's picture in police photo arrays is not unduly suggestive if the photographs do not resemble each other." *United States v. Lewis*, 838 F.Supp.2d 689, 701 (S.D. Ohio 2012), quoting *Gregory–Bey v. Hanks*, 332 F.3d 1036, 1052 (7th Cir. 2003). Because the photograph of Reed used in the first array bared little resemblance to Reed's photograph included in the second array, the repeated showing was not unduly suggestive.

. . .

{¶ 52} Having concluded that the administration of the photo line-ups was not unduly suggestive, we do not address the issue of reliability. The reliability of the identification is a matter of weight of the evidence, not admissibility. *See Gross,* 97 Ohio St.3d 121, 2002–Ohio–5524, at ¶ 22. The amount of weight to be given to the evidence and the credibility of the witnesses is a matter for the trier of fact. *DeHass*, 10 Ohio St.2d at paragraph one of the syllabus. Because the court did not err in admitting Ralston's identification testimony, we cannot conclude that plain error exists.

18

*Reed*, 2013 WL 5220878, at *9-11.

The state appellate court then considered Petitioner's ineffective-assistance claim based on counsel's failure to move to suppress the identification, reasoning:

> {¶ 53} As part of his tenth assignment of error, Reed argues that his trial counsel was ineffective for failing to file a motion to suppress Ralston's photo array identification and for failing to object to the testimony of her identification. To prove ineffective assistance of counsel, Reed must establish that (1) his counsel's performance was deficient, and (2) that but for counsel's deficient performance there is a reasonable probability that the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Having concluded that the administration of the photo line-ups was not unduly suggestive, Ralston's identification was properly admitted. As such, Reed cannot establish that his counsel's performance was deficient for failing to object or move to suppress her identification of Reed.

*Id.* at *11.

Petitioner argues that the state court's finding that the photo arrays were not unduly suggestive, and defense counsel therefore was not ineffective for failing to suppress the identification resulting from them, was unreasonable.  ECF Dkt. #12 at 6.  He contends the photo arrays were unduly suggestive because Petitioner was the only man to appear in both lineups, the only man in the first array not wearing any clothing, and the only man in the second array to have facial hair similar to the men in the first array.  *Id*. at 8, 12.  He further  asserts that by using unclear photographs in the first array, when better photos from the police's "preferred source" were "readily available," the detective "primed the witness as to the features in which to look for."  *Id*. at 8, 17.

A review of the color photographs used in both photo arrays confirms the decision of the state court that the lineups were not unduly suggestive.  First, the use of only Petitioner's photograph in both arrays was not improper because the photograph of Petitioner used in the first

19

array does not resemble the photograph of him used in the second array.  In addition, the fact that Petitioner had a beard, when all of the other men in the first array did and none of the other men in the second did, would not have unduly influenced the witness's identification.  The facial hair of several of the men shown in the first photo array is difficult to discern, making it unlikely that hair would have been a focal point of the witness's examination.  Petitioner's bare torso in his photograph in the first array similarly would not have unduly attracted the witness's attention.  Finally, Petitioner fails to explain how the first array, with its unclear photographs, "primed" the witness in any respect.  The photos were of such poor quality that they would likely have had little, if any, impact.

As the photo arrays were not unduly suggestive, Petitioner cannot demonstrate that he was prejudiced by defense counsel not objecting to Ralston's identification of Petitioner based on those arrays, and this ineffective-assistance claim is meritless.  *See Strickland*, 466 U.S. at 687 (if a petitioner fails to prove either deficiency or prejudice, his ineffective-assistance claim will fail).

### 2. *Failing to object to consideration of Petitioner's plea rejection in sentencing*

As noted above, Petitioner also contends that his trial counsel was ineffective for failing to object to the prosecution's recommendation, and the trial court's imposition, of a harsher sentence (life in prison without the possibility of parole) than the sentence the prosecution had offered during plea negotiations (a term of imprisonment of fourteen years) because he rejected the State's plea offer and proceeded to trial.[3]  Dkt. #12 at 19-22.  As explained in detail below,

---

[3] Petitioner appears to assert an additional, related claim of ineffective assistance in his traverse:  that his trial counsel was ineffective for signing the "Rejection of Plea Agreement" form (ECF Dkt. #8-1 at 7).  ECF Dkt. #12 at 22.  The Court, however, will not address this claim.  District courts properly decline to address grounds for relief first raised in a traverse

the Court agrees with the state appellate court that the trial court did not "punish" Petitioner for rejecting the plea offer and exercising his right to a trial.  It follows that Petitioner was not prejudiced by defense counsel's failure to object to the State's sentencing recommendation or the court's sentence on that basis.  *See Strickland*, 466 U.S. at 687.

Accordingly, the state appellate court's decision denying Petitioner's ineffective-assistance claims was not contrary to, nor an unreasonable application of, *Strickland* or its progeny.  The undersigned, therefore, recommends that the Court find no merit to Petitioner's first ground for relief.

## B.  *SECOND GROUND FOR RELIEF:  Trial-Court Error / Sentencing*

In his second ground for relief, Petitioner claims that the trial court violated his due process rights by considering in its sentencing decision his rejection of the State's plea offer as evidence of his refusal to accept responsibility for his crimes.  ECF Dkt. #12 at 20-22.  He argues the court "punished" him for exercising his right to a trial with a sentence of life imprisonment without the possibility of parole.  *Id*.  Petitioner raised this claim on direct appeal in state court, where it was adjudicated on the merits.  *See Reed*, 2013 WL 5220878, at *15-16.  Respondent argues the claim is meritless.  ECF Dkt. #8 at 28-33.

The state appellate court, the last state court to address this claim, opined:

{¶ 70} In his seventh assignment of error, Reed argues that the court erred in considering his rejection of a plea offer as evidence of failing to accept responsibility. In addition to plain error, Reed, as part of his tenth assignment of error, argues that his trial counsel was ineffective for failing to object to the court's consideration of his rejection of the plea as evidence of his failure to

---

rather than in the habeas petition.  *See, e.g., Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005). Furthermore, even if Petitioner had properly raised the claim here, the Court would not address it, as it was never fairly presented to the Ohio Supreme Court, *see* ECF Dkt. #8-1 at 173-74, and therefore is procedurally defaulted.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

accept responsibility.

{¶ 71} The court may not punish the defendant for exercising his or her right to a trial. *State v. Collmar*, 9th Dist. Summit No. 26496, 2013–Ohio–1766, ¶ 34. We have recently cited the Seventh District Court of Appeals' succinct explanation of this law.

> A defendant should never be punished for exercising his right to trial or refusing to enter into a plea agreement. *State v. O'Dell*, 45 Ohio St.3d 140 (1989), paragraph two of the syllabus. Such a punishment would impair the constitutional right to a trial by creating a chilling effect upon a defendant's ability to exercise his constitutional right. *State v. Scalf*, 126 Ohio App.3d 614, 621 (8th Dist.1998), quoting *United States v. Stockwell*, 472 F.2d 1186, 1187 (9th Cir.1973). Accordingly, a trial court may not augment a sentence because a defendant chooses to force the government to prove his guilt, " 'no matter how overwhelming the evidence of [defendant's] guilt.' " *Id.* at 620, quoting *United States v. Derrick*, 519 F.2d 1, 3 (6th Cir.1975).
>
> But there are legitimate reasons why a trial court may sentence a defendant more harshly after a trial on the merits than it may have after a guilty plea. First, the United States Supreme Court has recognized the propriety of offering lenient sentences in exchange for a guilty plea. *See Corbitt v. New Jersey*, 439 U.S. 212, 221–224 (1978). It is proper to offer a more lenient sentence in exchange for a guilty plea because a defendant's acknowledgement [sic] of guilt has shown a willingness to assume responsibility for this conduct and has taken the first step toward rehabilitation. *Brady v. United States*, 397 U.S. 742, 753 (1970). Second, a trial court knows more details about the facts of the case, the flavor of the event, and its impact upon the victim after a trial on the merits than it would after a guilty plea. *Derrick* at 4. This "more real and accurate appraisal of the circumstances which brought the defendant to the bar of justice" will "almost inevitably * * * affect the judge's consideration of what penalty appears most appropriate." *Id.* Accordingly, the fact that the sentence imposed after trial is greater than the sentence the State offered to recommend in exchange for a guilty plea does not demonstrate that the trial court acted improperly.

*Collmar* at ¶ 34, quoting *State v. Mayle*, 7th Dist. Carroll No. 04 CA 808, 2005–Ohio–1346, ¶ 45–46.

{¶ 72} Reed signed a written rejection of a plea offer. This typed form includes a

provision that states: "I understand that my rejection of a plea offer will be considered by the State and may be considered by the [c]ourt to be an unwillingness to accept responsibility for my alleged actions, should I be convicted at trial." Reed argues that this is an impermissible punishment for exercising his constitutional right to a trial.

{¶ 73} While this language does give us pause, the evidence does not support his argument that the court punished Reed for exercising his right to a trial. At the sentencing hearing, the court stated that it "formulated a sentencing decision based upon the overriding principles and purposes of felony sentencing." The court went on to find that there were no mitigating factors in this case. Reed shot Gucci in his back while Gucci was on the ground, an act that "was close to being an execution." Reed ignored his brother and his attempts to prevent Reed from "engaging in this activity." While awaiting trial, Reed was recorded trying to teach his 3 year old daughter to call Palmer a "snitchin bitch." The court found that the most important factor was Reed's criminal history. Reed had a "litany of offenses and [ ] opportunities * * * to straighten out [his] life." However, Reed had failed to take advantage of any of these opportunities. For these reasons, the court imposed the maximum sentence of life in prison without the possibility of parole. While the court did find that Reed had failed to take responsibility for his actions and placed his brother in a very uncomfortable position of having to testify against him, it made no reference to Reed's rejection of the plea agreement and we decline to read one into the record. Because we conclude the court did not err, we cannot conclude there is plain error.

{¶ 74} As part of his tenth assignment of error, Reed argues that his trial counsel was ineffective for failing to object to court's consideration of his rejection of the plea offer. Because the court made no reference to Reed's rejection of the plea offer, we cannot conclude that counsel was ineffective for failing to object.

*Reed*, 2013 WL 5220878, at *15-16.

Petitioner argues that in rejecting this claim, the state court "unreasonably and contrarily applied" the Supreme Court's decision in *Bordenkircher v. Hayes*, 434 U.S. 357 (1978).  In that case, the Court considered an allegation of prosecutorial vindictiveness arising from plea negotiations.  The state prosecutor threatened the defendant that if he refused to plead guilty to forgery, the offense with which he was originally charged, the prosecutor would bring habitual criminal offender charges as well.  *Id*. at 358–59.  When the defendant chose not to accept the plea and instead proceed to trial, the prosecutor carried through with his threat.  *Id*. at 359.  The

23

defendant was convicted of the more severe charges.  *Id.*

The *Bordenkircher* Court recognized the long-standing principle that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort . . . ."  *Id.* at 363.  But it found no due process violation presented by the facts before it.  The court distinguished two earlier cases, *North Carolina v. Pearce*, 395 U.S. 711 (1969), and *Blackledge v. Perry*, 417 U.S. 21 (1974), in which it found the State had violated the defendants' due process rights by enhancing penalties and charges after the defendants' successful appeals.  *Bordenkircher*, 434 U.S. at 362.  It noted that those cases "deal[t] with the State's unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction – a situation 'very different from the give-and-take negotiation common in plea bargaining between the prosecution and defense, which arguably possess relatively equal bargaining power.'"  *Id.* (quoting *Parker v. North Carolina*, 397 U.S. 790, 809 (1970)).  The Court found that the element of punishment, present in both *Pearce* and *Blackledge*, was not present in plea negotiations "as long as the accused is free to accept or reject the prosecution's offer."  *Id.* at 363.  It reasoned, "[w]hile confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable' – and permissible – 'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'"  *Id.* at 364 (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973)).

Thus, as the Sixth Circuit has explained, "*Bordenkircher* holds that actual retaliatory behavior is acceptable, at least in the plea bargaining context. . . . [It is] a unique case where a prosecutor acted vindictively, but an independent factor – the defendant's ability to choose –

eliminated any due process problems. " *United States v. Andrews*, 633 F.2d 449, 456-57 (6th Cir. 1980).

Here, as the state appellate court aptly concluded, the trial court in its sentencing "made no reference to Reed's rejection of the plea agreement and we decline to read one into the record." *Reed*, 2013 WL 5220878, at *16.  Indeed, Petitioner's only evidence of the State's alleged vindictiveness is:  (1) the trial court's observation during a pretrial hearing and at the sentencing that Petitioner was unwilling to accept responsibility for his crimes, which Petitioner characterizes as a "thinly veiled indication that [he] was being punished for not pleading guilty"; and (2) the prosecution's recommendation at trial of the maximum sentence after making Petitioner sign the "Rejection of Plea Agreement" form, which stated that his plea rejection "[would] be considered by the State and may be considered by the [c]ourt to be an unwillingness to accept responsibility for [his] alleged actions, should [he] be convicted at trial."  ECF Dkt. #12 at 22 (quoting ECF Dkt. #8-1 at 7).  As the state appellate court noted, however, the trial court cited numerous other factors that contributed to its sentencing decision, including, "most of all," Petitioner's criminal history.  *See Reed*, 2013 WL 5220878, at *16; ECF Dkt. #8-3 at 5-6. The court also found aggravating circumstances that arose after plea negotiations, such as his brother having to testify against him.  *Reed*, 2013 WL 5220878, at *16.  Further, the court found no mitigating factors.  *Id*.

Moreover, even if Petitioner could present compelling evidence of the State's retaliation against him for rejecting the plea deal, it would not amount to a due process violation under *Bordenkircher*.  Petitioner was free to accept or reject the prosecution's plea agreement.  By rejecting it and proceeding to trial, he voluntarily and knowingly assumed the "inevitable" and

"permissible" risk of a harsher punishment.  *Bordenkircher*, 434 U.S. at 364.

Accordingly, in denying Petitioner's due process retaliation claim, the state appellate court neither contravened nor misapplied *Bordenkircher* or any related Supreme Court precedent.

## VI.  *CONCLUSION AND RECOMMENDATION*

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS Petitioner's petition for a writ of habeas corpus (ECF Dkt. #1) in its entirety with prejudice.


DATE: September 23, 2016                    */s/  George J. Limbert*
                                            GEORGE J. LIMBERT
                                            UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).